BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 77785)
Jennifer S. Rosenberg (State Bar No. 121023)
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

SHERMAN BUSINESS LAW
Steven M. Sherman (State Bar No. 164620)
220 Montgomery Street, Suite 1500
San Francisco, CA 94104
Telephone: (415) 403-1660
Facsimile: (415) 397-1577
steven@shermanbusinesslaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Aric D. Jacobson, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>ARENA PHARMACEUTICALS, INC., JACK LIEF, ROBERT E. HOFFMAN, DOMINIC P. BEHAN, WILLIAM R. SHANAHAN, JR. and CHRISTY ANDERSON,<br><br>                              Defendants. | Case No.  **'10 CV2335 BTM WMC**<br><br>**CLASS ACTION**<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

---

COMPLAINT
CASE NO.
62408

**INTRODUCTION**

1. This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of Arena Pharmaceuticals, Inc. ("Arena" or the "Company") between December 8, 2008 and September 16, 2010, inclusive (the "Class Period"), against Arena and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").

2. Arena is a clinical-stage biopharmaceutical company focused on discovering, developing and commercializing oral drugs that target G protein-coupled receptors ("GPCRs") in four major therapeutic areas: cardiovascular, central nervous system, inflammatory and metabolic diseases. The Company's principal drug in development is lorcaserin hydrochloride ("Lorcaserin"), an experimental weight loss drug that has completed a pivotal Phase III clinical trial program. In December 2009, Arena submitted a New Drug Application ("NDA") to the Food and Drug Administration ("FDA") regarding Lorcaserin.

3. During the Class Period, defendants issued materially false and misleading statements regarding Lorcaserin. Defendants continuously hyped Lorcaserin's combination of efficacy, safety and tolerability and its potential for success without disclosing certain health risks associated with the drug. As a result of defendants' false statements, Arena's stock traded at artificially inflated prices during the Class Period, reaching a high of $7.95 per share on July 30, 2010.

4. On September 14, 2010, the FDA issued a briefing document in advance of its advisory panel meeting in which the agency questioned both the safety and efficacy of Lorcaserin. According to the FDA staff scientist's analysis, Lorcaserin produced minimal weight loss results, barely meeting the agency's threshold for weight loss effectiveness, while at the same time raising certain cardiovascular and cancer safety risks. Most notably, the briefing document disclosed that the drug was associated with malignant tumors in rats. Investors were not aware of the results of rat carcinogenicity studies prior to the release of the FDA briefing document.

5. The market price of Arena common stock plummeted upon this news, collapsing $2.72 per share to close at $4.13 per share on September 14, 2010 – a one-day decline of 40% on high volume.

6. On September 16, 2010, the FDA advisory panel voted 9 to 5 against approval of Lorcaserin, in large part because of the results of the rat carcinogenicity studies and the modest therapeutic benefits associated with Lorcaserin. On this news, Arena's stock fell another $1.75 per share to close at $1.99 per share on September 17, 2010 – a one-day decline of over 46% on high volume.

7. The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a) Defendants failed to disclose the truth concerning the potential for increased cardiovascular and cancer safety risks associated with Lorcaserin, including the results of the rat carcinogenicity studies; and

(b) Defendants failed to disclose the truth concerning the efficacy of Lorcaserin for weight loss.

8. As a result of defendants' false statements, Arena's stock traded at inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down nearly 75% from their Class Period high.

## JURISDICTION AND VENUE

9. Jurisdiction is conferred by §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5.

10. Venue is proper in this district pursuant to §27 of the 1934 Act. Many of the false and misleading statements were made in or issued from this district.

11. Arena maintains its principal executive office at 6166 Nancy Ridge Drive, San Diego, California 92121. Certain acts and conduct complained of herein, including the dissemination of materially false and misleading information to the investing public, occurred in this district.

COMPLAINT 2
62408

12.     In connection with the acts and conduct alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate wire and telephone communications.

**PARTIES**

13.     Plaintiff Aric Jacobson purchased the common stock of Arena during the Class Period and was damaged as the result of defendants' wrongdoing alleged in this complaint, as set forth in the certification attached hereto.

14.     Defendant Arena is a clinical-stage biopharmaceutical company focused on developing and commercializing oral drugs.  Arena has no drugs on the U.S. market.  Arena's principal drug in development is Lorcaserin, a weight loss drug to treat obesity.  Arena has submitted a NDA to the FDA regarding Lorcaserin.

15.     Defendant Jack Lief ("Lief") co-founded the Company and at all relevant times has been the Company's President, Chief Executive Officer ("CEO") and Chairman of the Board.

16.     Defendant Robert E. Hoffman ("Hoffman") is, and at all relevant times has been the Company's Chief Financial Officer ("CFO") and Vice President of Finance.

17.     Defendant Dominic P. Behan ("Behan") co-founded the Company and at all relevant times has been the Company's Senior Vice President, Chief Scientific Officer and a director.

18.     Defendant William R. Shanahan, Jr. ("Shanahan") is, and at all relevant times has been the Company's Vice President and Chief Medical Officer.

19.     Defendant Christy Anderson ("Anderson") is, and at all relevant times has been the Company's Vice President of Clinical Development.

20.     The defendants referenced above in ¶¶15-19 are referred to herein as the "Individual Defendants."

21.     The Individual Defendants, because of their positions with the company, possessed the power and authority to control the contents of Arena's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged

herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

### FRAUDULENT SCHEME AND COURSE OF BUSINESS

22. Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Arena. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Arena common stock was a success, as it: (i) deceived the investing public regarding Arena's prospects and business, (ii) artificially inflated the price of Arena common stock; (iii) allowed the Individual Defendants to be paid millions of dollars in incentive awards based in part on Arena's purported success; and (iv) caused plaintiff and other members of the Class to purchase Arena common stock at inflated prices.

### CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Arena common stock during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Arena has over 112 million shares of stock outstanding, owned by hundreds if not thousands of persons.

25.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

   (a) whether the 1934 Act was violated by defendants:

   (b) whether defendants omitted and/or misrepresented material facts;

   (c) whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

   (d) whether defendants knew or deliberately disregarded that their statements were false and misleading;

   (e) whether the price of Arena common stock was artificially inflated; and

   (f) the extent of damage sustained by Class members and the appropriate measure of damages.

26.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

27.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

28.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**BACKGROUND**

29.     Arena is a clinical-stage biopharmaceutical company focused on discovering, developing and commercializing oral drugs that target GPCRs in four major therapeutic areas; cardiovascular, central nervous system, inflammatory and metabolic diseases.  The Company's advanced drug candidate, Lorcaserin, has completed a pivotal Phase III clinical trial program.  In December 2009, Arena submitted an NDA for Lorcaserin, its experimental weight loss drug, for regulatory approval.

30.     Numerous drug companies are racing to obtain approval for their weight loss drugs because, in part, there is a dearth of "diet drugs" on the market.  The FDA has not approved a

1  prescription weight loss drug in more than a decade.  One problem associated with the

2  development and FDA approval of weight loss drugs is and has been the adverse safety profiles of

3  diet drugs.  Notably, several years ago, the diet drug known as Fen-phen was pulled from the

4  market because of an adverse safety profile concerning potential damage to heart valves in patients

5  taking the drug.  Ever since then, the market and the FDA have been very concerned with the

6  safety profiles of weight loss drugs proposed for FDA approval.  As recently as July 2010, the

7  weight loss drug Qnexa, submitted for FDA approval by Vivus Inc., did not receive FDA panel

8  approval due to safety concerns.

9      31.    Arena's weight loss drug, Lorcaserin, had been studied in animals, including in rat

10  carcinogenicity studies, which defendants admittedly knew were being conducted.  The results of

11  the rat carcinogenicity studies became known to defendants before they conducted the Phase III

12  clinical trials.  The results of the rat carcinogenicity studies included carcinogenicity signals in the

13  form of mammary tumors.

### DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

17      32.    On December 8, 2008, Arena issued a press release announcing the publication of

the results of its Phase IIb clinical trial results of Lorcaserin in the official peer reviewed journal of

*the Obesity Society*.  Defendants discussed the results of the study and the nature of adverse events.

Defendant Lief stated:

> "The data highlighted in this publication demonstrate lorcaserin's potential
> to become the first in a new class of weight management agents, thereby
> addressing an urgent need for new approaches to the obesity epidemic….
> We are confident the three ongoing lorcaserin Phase 3 trials will build on the
> clinical data published today, and we eagerly anticipate the announcement of
> our first Phase 3 data from the BLOOM trial around the end of March 2009.
> We expect the top-line BLOOM data will be followed by a peer reviewed
> presentation of the data at a conference later in the year, the announcement
> of BLOSSOM data in the Fall, and the submission of our New Drug
> Application to the FDA by the end of 2009."

26      33.    Upon this news, Arena's stock closed up $0.24 per share to close at $3.84 per share

27  on December 8, 2008.  By the end of December 2008, Arena's stock closed at $4.17 per share.

34. On March 12, 2009, Arena issued a press release announcing its fourth quarter and year end 2008 results. Defendant Lief reported on Lorcaserin in the press release, stating: "We are excited that in only a few weeks we will be announcing top-line data from the first of two pivotal trials evaluating the safety and efficacy of lorcaserin, which has the potential to be the first in a new class of drugs selectively targeting a well validated weight loss receptor…."

35. On March 30, 2009, Arena issued a press release announcing positive results from its Phase III BLOOM trial for Lorcaserin. Defendants discussed the results of the study and the nature of adverse events.

36. On May 11, 2009, Arena issued a press release announcing its first quarter 2009 results. Defendant Lief reported on Lorcaserin in the press release, stating: "Receiving the positive lorcaserin BLOOM results was a significant milestone for Arena, and we are focusing our financial, management and development resources on completing the lorcaserin BLOSSOM trial on schedule and submitting our New Drug Application for lorcaserin by the end of the year …."

37. On June 17, 2009, Arena announced it had entered into a $100 million credit facility with Deerfield Management ("Deerfield"), a healthcare investment organization and one of the Company's largest stockholders.

38. On July 8, 2009, Arena engaged in a public offering of 12.5 million shares of its common stock at a purchase price of $4.17 per share. Arena received $52.1 million in gross proceeds from the offering.

39. On August 3, 2009, Arena issued a press release announcing its second quarter 2009 results. Defendant Lief reported on Lorcaserin in the press release, stating: "We are on track to announce results from the BLOSSOM trial in September, which we expect will be the final piece of lorcaserin's NDA that we plan to submit by the end of this year… Based on its emerging efficacy, safety and tolerability profile, lorcaserin has the potential to be an important new treatment option for patients needing to better manage their weight and improve their overall health. Our improved financial position strengthens our ability to obtain marketing approval for lorcaserin and our position in partnership discussions."

40. On September 18, 2009, Arena issued a press release announcing positive results from its Phase III BLOSSOM trial for Lorcaserin. Defendants discussed the results of the study and the nature and rate of adverse events. Defendant Lief stated:

> "History has taught us that the marriage of efficacy and safety is of critical importance in treating patients. Neither is sufficient without the other. With its excellent safety and tolerability profile, we expect lorcaserin to change the way primary care doctors treat the broad cross-section of overweight and obese patients with pharmacotherapy….With the completion of our robust Phase 3 pivotal program, we will focus on the NDA filing, work with the FDA during the review process and prepare for the commercialization of lorcaserin."

41. On October 25, 2009, Arena issued a press release announcing additional positive results from it BLOOM trial for Lorcaserin. Defendants discussed the results of the study and the nature and rate of adverse events.

42. On October 27, 2009, Arena issued a press release announcing additional positive results from its BLOSSOM trial for Lorcaserin. Defendants discussed the results of the study and the nature and rate of adverse events.

43. On November 9, 2009, Arena issued a press release announcing its third quarter 2009 results. Defendant Lief reported on Lorcaserin in the press release, stating: "The successful completion of the lorcaserin pivotal program in the third quarter was a critical milestone for Arena….If approved, the unique combination of efficacy, safety and tolerability positions lorcaserin as first-line therapy."

44. On December 10, 2009, Arena issued a press release announcing additional published data and additional positive results from its BLOSSOM trial for Lorcaserin. Defendants discussed the results of the study and the nature and rate of adverse events.

45. On December 22, 2009, Arena submitted its NDA for Lorcaserin based on a data package that included 18 clinical trials totaling 8,576 patients. The pivotal Phase III clinical trial programs, BLOOM (Behavioral modification and Lorcaserin for Overweight and Obesity Management) and BLOSSOM (Behavioral modification and Lorcaserin Second Study for Obesity Management), evaluated nearly 7,200 patients who were treated for up to two years.

46. On this news, Arena's stock closed up $0.10 per share on December 22, 2009, to close at $3.84 per share. Thereafter, Arena's stock continued to trade in the $3.00-$4.00 per share range for the next six months.

47. On February 26, 2010, Arena issued a press release announcing that the FDA had assigned a date of October 22, 2010 to review the NDA for Lorcaserin. The press release falsely and misleadingly stated: "In both [BLOOM and BLOSSOM] trials, lorcaserin produced statistically significant weight loss with excellent safety and tolerability."

48. On March 12, 2010, Arena issued a press release announcing its 2009 results. Defendant Lief reported on Lorcaserin in the press release, stating: "We are pleased with the timely execution and significant progress made in our lorcaserin program….[W]e are building a strong foundation for a successful launch upon potential approval." The press release reiterated the false and misleading statement made in the February 26, 2010 press release, stating: "In both [BLOOM and BLOSSOM] trials, lorcaserin produced statistically significant weight loss with excellent safety and tolerability."

49. On May 7, 2010, Arena issued a press release announcing its first quarter 2010 results. Defendant Lief reported on Lorcaserin in the press release, stating: "We believe that lorcaserin represents a significant medical and commercial opportunity based on the drug candidate's unique combination of safety, efficacy and tolerability in our pivotal trial program." The press release contained the further false and misleading statement that "[i]n both [BLOOM and BLOSSOM] trials, lorcaserin produced statistically significant weight loss with excellent safety and tolerability."

50. On July 1, 2010, Arena issued a press release announcing that the Company had entered into a marketing and supply agreement with Eisai Inc. ("Eisai") related to Lorcaserin. Pursuant to the agreement, Eisai would have exclusive rights to market and distribute the drug in the United States following the approval of Lorcaserin by the FDA. Arena would manufacture Lorcaserin and sell the drug to Eisai for marketing and distribution in the United States. In addition, per the agreement, Arena would receive an upfront payment of $50 million and the

Company would further be entitled to received up to an additional $90 million in milestone payments after Lorcaserin received FDA approval

51. Upon this news, Arena's stock began to climb.  It closed up $0.56, or 16%, to close at $3.56 per share on July 1, 2010.

52. On July 14, 2010, Arena issued a press release announcing the publication of the results of the two-year BLOOM study in the *New England Journal of Medicine.*  Defendants discussed the results of the study and the nature and rate of adverse events.  Defendants failed to include in their discussion of the safety profile of Lorcaserin the adverse results from the rat carcinogenicity studies.

53. On July 15, 2010, it was announced that the FDA had denied approval for the weight loss drug Qnexa, submitted for approval by Arena's competitor Vivus Inc., due to safety concerns.

54. Upon this news, Arena's stock closed up $0.74, or 18%, to close at $4.66 per share on July 16, 2010.  Thereafter, Arena's stock continued to trend upwards, reaching its Class Period high of $7.95 per share on July 30, 2010.

55. On August 3, 2010, Arena issued a press release announcing its second quarter 2010 results.  Defendant Lief reported on the upcoming date for the FDA advisory panel meeting for Lorcaserin and reported on results from the Lorcaserin studies, providing data on the benefits of Lorcaserin.  Defendants failed to include in their discussion of Lorcaserin the adverse results from the rat carcinogenicity studies.

56. On August 6, 2010, Arena issued a press release confirming the September 16, 2010 date of the FDA Advisory Committee meeting.  Defendant Lief stated:  "We …look forward to reviewing lorcaserin's profile with the panel members," and reiterated the prior false and misleading statement that "[i]n both [BLOOM and BLOSSOM] trials, lorcaserin was well tolerated and produced statistically significant weight loss."

57. Further on august 6, 2010, Arena announced that it had entered into an agreement with Deerfield to sell to Deerfield a total of 8,955,224 shares of its common stock at a price of $6.70 per share in a registered direct public offering.  Arena received $60 million in gross proceeds

from the offering.  Arena further announced that it had also amended its pre-existing credit facility with Deerfield in connection with the offering.

58. On September 14, 2010, the FDA issued a briefing document in advance of its advisory panel meeting in which the agency questioned both the safety and efficacy of Lorcaserin. According to the FDA staff scientist's analysis, Lorcaserin produced minimal weight loss results, barely meeting the agency's threshold for weight loss effectiveness, while at the same time raising certain cardiovascular and cancer safety risks.  Most notably, the briefing document disclosed that the drug was associated with malignant tumors in rats.  Investors were not aware of the results of the rat carcinogenicity studies prior to the release of the FDA briefing document.

59. The market price of Arena common stock plummeted upon this news, collapsing $2.72 per share to close at $4.13 per share on September 14, 2010 – one-day decline of 40% on high volume.

60. On September 16, 2010, the FDA advisory panel voted 9 to 5 against approval of Lorcaserin, in large part because of the results of the rat carcinogenicity studies and the modest therapeutic benefits associated with Lorcaserin.

61. In a conference call with analysts on September 17, 2010, defendants admitted that they were aware of these results but decided not to disclose them to the public because they did not believe they were material.

62. Arena's stock fell another $1.75 per share to close at $1.99 per share on September 17, 2010 – a one-day decline of over 46% on high volume.

63. The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a) Defendants failed to disclose the truth concerning the potential for increased cardiovascular and cancer safety risks association with Lorcaserin, including the results of the rat carcinogenicity studies; and

(b) Defendants failed to disclose the truth concerning the efficacy of Lorcaserin for weight loss.

64.     As a result of defendants' false statements, Arena stock traded at inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down 75% from their Class Period high.

## LOSS CAUSATION

65.     By misrepresenting, *inter alia*, the company's prospects for its experimental new drug Lorcaserin, the defendants presented a misleading picture of Arena's business and prospects. Thus, instead of truthfully disclosing during the Class Period that Lorcaserin raised certain safety concerns, including the risk of cancer, and only provided a modest weight loss benefit, defendants constantly assured investors that Lorcaserin was safe and effective.

66.     These claims caused and maintained the artificial inflation in Arena's stock price throughout the Class Period and until the truth was revealed to the market.

67.     On September 14, 2010, the FDA issued a briefing document questioning the efficacy and safety of Lorcaserin, causing Arena's stock to collapse 40% from $6.85 per share to $4.13 per share in one day.

68.     On September 16, 2010, the FDA advisory panel voted against approving Lorcaserin, finding that the benefits of the drug did not outweigh the risks associated with the drug, causing Arena's stock price to collapse another 46% from $3.74 per share to $1.99 per share in one day.

69.     As a direct result of defendants' admissions and the public revelations regarding the truth about Arena's actual business prospects going forward, Arena's stock price fell 75% from its Class Period high, from $7.95 per share on July 30, 2010 to close at $1.99 per share on September 17, 2010. This drop removed the inflation from Arena's stock price, causing real economic loss to investors who had purchased the stock during the Class Period.

## NO SAFE HARBOR

70. Arena's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

71. The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Arena who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

72. Plaintiff incorporates ¶¶1-71 by reference.

73. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

74. Defendants violated §10(b) of the 1934 Act and rule 10b-5 in that they:

(a) employed devices, schemes and artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Arena common stock during the Class Period.

75. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Arena common stock.  Plaintiff and the Class would not have purchased Arena common stock at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

76. Plaintiff incorporates ¶¶1-75 by reference.

77. The Individual Defendants acted as a controlling persons of Arena within the meaning of §20(a) of the 1934 Act.  By virtue of their positions with the Company, and ownership of Arena stock, the Individual Defendants had the power and authority to cause Arena to engage in the wrongful conduct complained of herein.  Arena controlled the Individual Defendants and all of its employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B. Awarding plaintiff and the members of the Class damages, including interest;

C. Awarding plaintiff reasonable costs and attorneys' fees; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 10, 2010        BRAMSON, PLUTZIK, MAHLER &
                                BIRKHAEUSER, LLP


                                  _____s/Jennifer S. Rosenberg_____

                                        Jennifer S. Rosenberg

                                Alan R. Plutzik (State Bar No. 77785)
                                Jennifer S. Rosenberg (State Bar No. 121023)
                                2125 Oak Grove Road, Suite 120
                                Walnut Creek, California  94598
                                Telephone: (925) 945-0200
                                Facsimile:  (925) 945-8792
                                aplutzik@bramsonplutzik.com

                                SHERMAN BUSINESS LAW
                                Steven M. Sherman (164620)
                                220 Montgomery Street, Suite 1500
                                San Francisco, CA 94104
                                Tel: (415) 403-1660
                                Fax: (415) 397-1577
                                steven@shermanbusinesslaw.com


                                Attorneys for Plaintiff

# CERTIFICATION FOR CLASS ACTION
## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

I, Aric Jacobson, under the penalty of perjury, hereby certify as follows:

1. I am the Lead Plaintiff in the within Class Action Complaint (the "Complaint"). This certification is made pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995, and as required by Section 21D(a)(2) of Title I of the Securities Exchange Act of 1934.

2. I have read the foregoing Complaint filed on my behalf, and on behalf of all others similarly situated, and I authorize its filing.

3. I did not purchase the securities that are the subject of the Complaint at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4. I am willing to serve as representatives on behalf of the Class, including providing testimony at depositions and trial, if necessary.

5. The following sets forth are all of my transaction(s) in Arena Pharmaceuticals, Inc., common stock that are the subject of the Complaint and which were effected during the Class Period specified in the Complaint:

| Date | Type of Security - Number of Shares | Transaction Type (Purchase or Sale) | Price per Share |
|---|---|---|---|
| September 14, 2010 | Common stock - 1,000 shares | Purchase | $4.169 |
| September 14, 2010 | Common stock - 750 shares | Purchase | $4.20 |
| September 14, 2010 | Common stock - 750 shares | Purchase | $4.22 |

6. During the three-year period preceding the date on which this Certification was signed, I have neither sought or served as a representative party on behalf of a Class in any action under Title I of the Securities Exchange Act of 1934.

7. I agree not to accept any payment for serving as a representative party on behalf of the Class, beyond my pro rata share of any recovery, except as ordered or approved by the Court.

1      8.     I make this Certification without waiver of any applicable privileges and without waiver of any right to challenge the necessity for, or the constitutionality of, this Certification, or to object to the filing of this Certification on any ground whatsoever.

     9.     The matters stated in this Certification are true to the best of my current knowledge, information and belief.

CERTIFIED, UNDER THE PENALTY OF PERJURY, at San Diego, California, this 28 day of October, 2010.

_____
Aric Jacobson

%JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
Aric D. Jacobson, individually and on behalf of all others similarly situated,

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Bramson Plutzik Mahler & Birkhaeuser, LLP, 2125 Oak Grove Road, Suite 120, Walnut Creek, CA 94598, Tel. 925-945-0200

### DEFENDANTS
Arena Pharmaceuticals, Inc., Jack Lief, Robert E. Hoffman, Dominic P. Behan, William R. Shanahan, Jr., Christy Anderson

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**'10 CV 2335 BTM WMC**

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land |  / ☐ 530 General |  |  | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |  |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee |  | ☐ 950 Constitutionality of State Statutes |
|  |  / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions |  |  |
|  | ☐ 440 Other Civil Rights |  |  |  |

### V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. section 78a et seq.
Brief description of cause:
Securities fraud

### VII. REQUESTED IN COMPLAINT:
☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE  Moskowitz
DOCKET NUMBER  3:10-cv-01959-BTM(BLM)

DATE  11/10/2010
SIGNATURE OF ATTORNEY OF RECORD
s/Jennifer S. Rosenberg

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____